[No. 16291.    Department Two.    September 1, 1921.]

NORTHERN PACIFIC RAILWAY COMPANY, *Appellant*, v.
WALLA WALLA COUNTY *et al., Respondents.*[1]

WATERS (92)—IRRIGATION DISTRICTS—ASSESSMENTS—BENEFITS TO
PROPERTY—STATUTES.  The inclusion of land within the boundaries
of an irrigation district does not necessarily mean that it is capable
of receiving benefit from the district's irrigating system, and thus
liable to contribute to the maintenance of the system.

SAME (92).  Land included in an irrigation district which is in-
capable of irrigation and cultivation would not be subject to main-
tenance charges, in view of Rem. Code, § 6433, providing that assess-
ments therefor "shall be made in proportion with the benefits accru-
ing to the lands assessed," and Id., § 6452, providing that such
charges may be collected "from all persons using said canal for
irrigation and other purposes."

SAME (92)—RECOVERY OF ASSESSMENT—FRAUD—COMPLAINT—SUF-
FICIENCY.  In an action to recover money paid on an assessment for
maintenance of an irrigation system which was illegally exacted
from plaintiff, the complaint would not be demurrable for failure
to allege fraud or wilful misconduct on the part of the directors of
the district, since the allegations of the complaint sufficiently show
legal fraud when they set up that the plaintiff's land had been
charged with an assessment when it was not in fact benefited by the
maintenance of the irrigation system.

Appeal from a judgment of the superior court for
Walla Walla county, Mills, J., entered November 4,
1920, upon sustaining demurrers to the complaint, dis-
missing an action to recover a tax paid under protest.
Reversed.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte, C. A.
Murray,* and *John H. Pedigo,* for appellant.

*A. J. Gillis* and *Moulton & Jeffrey,* for respondents.

PARKER, C. J.—The plaintiff railway company com-
menced this action in the superior court for Walla
Walla county, seeking recovery of the sum of $230.87,

[1]Reported in 200 Pac. 585.

claimed to have been unlawfully exacted from it by the officers of the defendants county and irrigation district as an assessment upon certain lands owned by it, for the expense of operating and maintaining the irrigation system of the defendant district; which sum was paid by the railway company under protest for the purpose of preventing the casting of a cloud upon its title to the land in the form of a sale thereof in satisfaction of the claimed lien of the assessment thereon. The county and irrigation district demurred to the complaint of the railway company upon the ground of insufficiency of facts to constitute a cause of action. The demurrers were by the court sustained, and the railway company electing to stand upon its complaint and not plead further, judgment of dismissal with prejudice was rendered against it, from which it has appealed to this court.

Following the allegations of the corporate existence of the railway company, the county and the irrigation district, and the ownership of the land by the railway company, the complaint alleges:

"    . . . which property was acquired and owned for the purpose of constructing sand guards or fences in order to protect plaintiff's railway track from being buried and obstructed by drifting sand. Said lands are within the bounds of defendant irrigation district, but the same are not susceptible of any use for agriculture and could not be devoted to such use because of their nature and topography, being nothing but drifting sands in which it would be impossible to grow any crops, trees or shrubs of any kind whatever.

"On or about the 13th day of September, 1918, defendant irrigation district, acting through its duly authorized officers and agents, passed a resolution as follows:

" 'Be it resolved, that there shall be and is hereby levied against all lands in said irrigation district in-

cluded in the assessment roll as benefited lands, an assessment in the aggregate of $18,200 to cover the following items which are hereby declared to be the necessary amounts for interest, maintenance and operation, and emergency, deficit:

Interest on bonds issued.............$ 1,040
Expense of operation and maintenance for the ensuing year........ 14,560
Fund to cover deficit................ 2,600

Total ....................$18,200

and be it further resolved that the Sec. be and is hereby directed to extend the assessment roll as against such tract of land appearing thereon, in accordance with the ratio of benefits as heretofore fixed and established; and upon said extension being made the Sec. is directed to file the assessment roll with the county treasurer as by law provided.

" 'Passed by the board of directors this 13th day of September, 1918.

" 'J. H. Sharry, Sec.
" 'A. H. Hawkins, Pres.'

"Pursuant to said resolution, there was levied an assessment against plaintiff's land in the sum of $14.06, interest on bonds, the sum of $195.94 for maintenance of the irrigation system used for furnishing water to lands within the district, and the sum of $34.93 for a deficit on account of previous years' maintenance of said irrigation works, or a total of $244.93, . . . Said assessment was duly certified to the county treasurer and was by that officer spread on the tax rolls for the year 1918. . . .

"Said assessment is illegal and void to the extent that the same was levied against plaintiff's lands for the maintenance of said irrigation system for the year 1918 and for said deficit for previous years' maintenance, in that there is no provision or authority of law for levying an assessment for maintenance on any lands within the district which are not being irrigated or are not susceptible of irrigation and cultivation on account of their character and topography, . . .

". . . the only portion of said assessment which could be lawfully levied upon plaintiff's lands was that for interest on bonds in the sum of $14.06, as aforesaid.

"On the 31st day of December, 1918, plaintiff duly tendered to the county treasurer of defendant county said sum of $14.06 in payment of said assessment, said tender being made unconditionally and without prejudice to the right of said county or said irrigation district to claim and recover the full amount appearing to be due. . . . The defendant county refused to accept said tender for no other reason than that it did not include the amount levied for the maintenance of said irrigation works, . . . Thereupon, and on the 31st day of December, 1918, plaintiff paid to defendant county the full amount appearing to be due in the sum of $244.93, protesting that the same was illegal in the sum of $230.87, as aforesaid, . . . Said payment was made for the purpose of relieving plaintiff's property from the lien and cloud cast thereon by reason of said pretended assessment appearing on the general tax rolls of defendant county, and to protect its property from being sold in payment thereof."

No contention is here made that this is not an appropriate form of action, or that it was not timely commenced for the purpose of testing the legality of the assessment in question. The only question presented in the briefs of counsel is whether or not the assessment was lawfully made against the land of the railway company, assuming, as we must for the present, that the allegations of its complaint are true. We think the allegations of the complaint must be viewed as meaning that the maintenance of the irrigation district could not, under any circumstances, result in any benefit to the land in question. The argument of counsel for respondents seems to be that the question of the land being benefited by the maintenance of the irrigation system is foreclosed by the fact that it was,

we shall assume, lawfully included within the boundaries of the district. We cannot give assent to this view. We do not think that the mere fact that the land happens to be within the boundaries of the district necessarily means that it is capable of receiving benefit from the maintenance of the irrigation system of the district, in the sense of becoming liable to contribute toward the maintenance of the irrigation system of the district. The provisions of the irrigation statutes which seem to call for notice in our present inquiry, referring to the sections of Rem. Code, are the following:

"§ 6432. Said bonds . . . [bonds for construction, and acquisition of property] shall be paid by revenue derived from an annual assessment upon the real property of the district, and all the real property in the district shall be and remain liable to be assessed for such payments as hereinafter provided. : ."

"§ 6433. Assessments made in order to carry out the purposes of this act shall be made in proportion with the benefits accruing to the lands assessed. . ."

"§ 6452. The cost and expense of purchasing and acquiring property, and construction, reconstruction, extension, and betterment of the works and improvements herein provided for, and the expenses incidental thereto, and indebtedness to the United States for district lands assumed by the district, and for the carrying out of the purposes of this chapter, may be paid by the board of directors out of the funds received from bond sales. For the purpose of defraying expenses of the organization of the district, and of the care, operation, management, repair and improvement of such portions of said canal and works as are completed and in use, the board may either fix rates or tolls and charges, and collect the same from all persons using said canal for irrigation and other purposes, or they may provide for the payment of said expense by a levy of assessment therefor, or by both said tolls and assessment; if by the latter method, such levy shall be made on the completion and equalization of

the assessment-roll each year, and the board shall have the same powers and functions for the purpose of said levy as possessed by it in case of levy to pay bonds of the district.''

There may be some room for arguing that this land, by the mere fact of being within the boundaries of the district, is subject to assessment, viewed as a general tax, to aid in paying for the construction of, and acquiring property rights for, the irrigation system. Counsel for appellant seem to concede this much for the purposes of this case; but if such be a correct view of the provisions of § 6432, Rem. Code, in view of the statement in that section that ''all the real property in the district shall be and remain liable to be assessed for such payments,'' we think it does not follow that the property in question became liable for maintenance charges if it is in fact not capable of being benefited by the maintenance of the district's irrigation system, as alleged in the complaint. It will be observed that, by the express provisions of § 6433, Rem. Code, the assessments ''shall be made in proportion with the benefits accruing to the lands assessed.'' If this does not apply to the assessment or tax to pay for construction and property acquisition bonds, we think it in any event applies to maintenance cost, in view of the provisions of § 6452, Rem. Code.

Some contention is made in respondents' behalf that the allegations of the complaint fail to show ''fraud or wilful misconduct on the part of the board of directors of the irrigation district.'' The argument seems to be that they must be presumed to have acted honestly, in the absence of some specific allegation to the contrary. This is not so much a question of the honesty of purpose of the board of directors in a moral sense, as whether or not they have charged the railway company's land with this assessment, when in fact

it is not and cannot be benefited by the maintenance of the irrigation system. If this occurred, a legal fraud was worked upon the railway company; and the allegations of the complaint show such a fraud.

We conclude that the order of the trial court sustaining the demurrers to appellant's complaint, and the judgment rendered thereon dismissing the action, must be reversed and the cause remanded to the trial court with directions to overrule the demurrers, and for further proceedings. It is so ordered.

MAIN, MITCHELL, and MACKINTOSH, JJ., concur.