(No. 30104.—▮▮▮▮▮▮▮▮

CHICAGO AND NORTH WESTERN RAILWAY COMPANY, Appellant, *vs.* DRAINAGE DISTRICT No. 1 OF THE TOWN OF HARMON *et al.*, Appellees.

*Opinion filed Sept. 18, 1947—Rehearing denied November 17, 1947.*

DIXON, DEVINE, BRACKEN & RYAN, of Dixon, and NELSON TROTTMAN, of Chicago, for appellant.

CLYDE SMITH, of Dixon, for appellees.

Mr. JUSTICE FULTON delivered the opinion of the court:

This is an appeal by the plaintiff from a decree of the circuit court of Lee County, dismissing for want of equity the plaintiff's complaint by which it sought to review and have set aside a drainage assessment for repairs to drainage works made under authority of the Farm Drainage Act and for an injunction to restrain the enforcement of the assessment.

The record discloses that the plaintiff, Chicago and North Western Railway Company, owns a line of railroad running from Nelson, in Lee county, south to Peoria. This railroad traverses sections 6, 7 and 18 in township 20, range 8 east, in Lee County, parts of which sections are included within the boundaries of Harmon Drainage District No. 1. The assessment involved in this proceeding amounts to the sum of $1345 and affects the plaintiff's right of way in sections 6 and 18. The drainage district was originally organized in 1880 under what was then known as the Farm Drainage Act, and the original ditches, which were in substantially the locations they now are, were constructed in that year. The railroad was originally constructed in 1901, and since that time the drainage district has remained practically unchanged but for the cleaning and repairing of the ditches that existed at the time the railroad was constructed. At the time the railroad was constructed its right of way crossed two drainage ditches, the commissioners having entered into an agreement with the plaintiff's predecessor company, by the terms of which the commissioners granted the railroad company the right

to construct its railroad across the ditches and the railway company agreed to construct its bridges according to certain specifications prescribed by the district, and agreed that whenever the drainage district desired to clean, deepen or enlarge its ditches, the railroad company would open up and enlarge its bridges to facilitate the work of the drainage district.

Until 1923, no drainage assessment for cleaning and repairing the ditches had ever been levied against the railroad. In that year, the commissioners levied an assessment upon the basis of acreage and levied an assessment against the plaintiff in the amount of $218.39. Prior to that time, assessments had been levied by the district in 1904, 1910 and 1911, but in those years the right of way of the railroad was not assessed. The 1923 assessment, however, included amounts which would have been so levied against the plaintiff's right of way in those years had assessments been made against the right of way. The plaintiff objected to the 1923 assessment on the ground that its property was not benefited by the work, and thereafter the assessment was, by agreement, reduced to $120 and, as reduced, was paid by plaintiff.

In 1926, two assessments were made against the railroad which totalled $1965.95. These were based upon the determination of the benefits to the right of way and not upon acreage. The plaintiff appealed from one of these two assessments in 1926 but not from the second. A compromise agreement was made by the commissioners and the railroad by which the railroad paid $1700 in settlement of its 1926 assessments.

On October 9, 1945, the commissioners adopted a resolution that $26,900 be raised by special assessment for the purpose of repairs and cleaning out the ditches. On January 17, 1946, they adopted a tax list purporting to distribute this levy, by which the plaintiff's property was assessed in the total amount of $1345. On the same day,

the tax list, including this assessment, was deposited with the clerk of the district, a copy of the tax list being also filed with the recorder of deeds of Lee County. No notice of this assessment or the deposit of the tax list with the clerk of the district was ever given to the plaintiff. There was no publication, posting, or other notice, either actual or constructive, given of the making of the assessment and the filing of the tax list. On March 12, 1946, the clerk of the district sent by mail to the plaintiff, a notice of the amount of plaintiff's assessment, which notice stated that the assessment was due March 1, 1946, that it amounted to $1345 and that the assessment bore interest at the rate of 6 per cent from April 15, 1946. This notice was received by plaintiff, and it is the only notice which the plaintiff ever received with reference to the making of the assessment.

Section 27 of the Farm Drainage Act provides, "Any person against whose land a tax has been thus levied may, within ten days after the tax list has been deposited with the clerk of the drainage district, appeal to the county court by filing a bond in double the amount of the tax appealed from, in the county clerk's office, but the appeal shall be upon the ground only that such tax is a greater amount than the benefits to accrue to the land in question by the proposed drainage." Ill. Rev. Stat. 1945, chap. 42, par. 110.

Since the plaintiff had no notice of the assessment until the ten-day period had expired, no appeal was taken to the county court, and the plaintiff instituted this proceeding by which it sought to question the validity of the assessment because it was alleged to be greater in amount than the benefits to accrue to plaintiff's land, and was so grossly excessive, arbitrary and without rational foundation that it was confiscatory, and that the making of the assessment without notice or opportunity to be heard constituted denial to the plaintiff of due process of law and deprivation of

plaintiff's property without due process of law. The complaint, among other things, also attacked the classification made in 1926 on the ground that section 40 of the Farm Drainage Act contained no provision whereby public roads or railroads might be assessed for supposed benefits because of the cleaning out of drainage ditches already constructed before the time of the construction of the highway or railroad.

The defendants filed an answer denying the allegations of the complaint, and the plaintiff filed a reply, and an additional reply, in which it denied, among other things, that its failure to appeal from the 1926 classification rendered that question *res judicata.*

The matter was heard before the chancellor, the testimony being without substantial conflict, and at the conclusion of the trial, the court made certain findings of fact and made certain conclusions of law. Among other findings of fact, the court found that the assessments upon lands other than the plaintiff's right of way were substantially less per acre than that against plaintiff's right of way, that the assessment of land used for highway purposes was less than the assessment of plaintiff's right of way and that the benefit to the land used for highway purposes was in excess of the benefit to the plaintiff's right of way. The court determined, as a matter of law, that the failure of the plaintiff to appeal to the county court within ten days after the deposit with the clerk of the drainage district of the tax list containing the assessment against plaintiff's property would not preclude the plaintiff from asserting in a court of competent jurisdiction that such tax is greater in amount than the benefits to accrue to plaintiff's right of way, and the court found that the cause was without equity and ordered that the complaint be dismissed.

The plaintiff contends that the trial court erred in dismissing the cause on several grounds. However, for the purpose of this opinion, we need to consider only one

alleged error, namely, that the trial court should have held section 27 of the Farm Drainage Act unconstitutional because it does not require reasonable notice of the filing of the tax list with the clerk of the drainage district so as to enable any person against whose land a tax has been levied to avail himself of the right to appeal as provided by section 27.

The chancellor, in his conclusions of law, held that the plaintiff has a constitutional right to litigate the assessment complained of on the ground that the tax is greater in amount than the benefit to accrue to the plaintiff's property. He also found that the plaintiff was entitled to reasonable notice of the deposit of the tax list with the clerk of the drainage district and he found that the mere deposit with the clerk of the drainage district of the list would not, of itself, constitute notice to the plaintiff of the assessment. We likewise conclude that the plaintiff's failure to appeal to the county court within ten days from deposit of the tax list with the clerk of the district would not estop the plaintiff from asserting in a court of competent jurisdiction that the tax was greater in amount than the benefits to accrue to plaintiff's property.

Section 27 of the Farm Drainage Act was re-enacted in 1915, substantially in the form it had been prior to 1901. From 1901 to 1915 when section 27 was not in the Farm Drainage Act, this court held that a land owner had a right to a hearing on the question whether the benefits were equal to the assessment and that the land owner could litigate that matter in the proceeding where the collector made application for judgment against the land for non-payment of the assessment. *People ex rel. Kellogg* v. *Brown*, 253 Ill. 578; *People ex rel. Freeman* v. *Whitesell*, 262 Ill. 387.

In the case of *People ex rel. Fish* v. *Bradshaw*, 303 Ill. 558, decided after section 27 of the act was re-enacted, we held that a land owner, having opportunity to be heard on

the questions of benefits under section 27 and failing to avail himself of that opportunity, cannot later raise the question upon the collector's application for judgment and order of sale. In that case, it appears that the assessment closely followed the classification proceeding of which the land owner had notice and in which he appealed.

We believe that the purpose of section 27 of the Farm Drainage Act was to provide an orderly procedure for reviewing the question of benefits to be derived from the drainage and to determine the correctness of the assessment. However, section 27 does not require that any notice of the assessment or the filing of the tax lists be given to the land owner and, therefore, since we have held that the land owner is entitled to have the question of benefits and the assessment reviewed in some forum, we believe that where a land owner has no notice, actual or constructive, of the filing of the tax list and making of the assessment, he is not precluded from raising the question of benefits in a proceeding by the collector for collection of the tax.

It is our opinion that the chancellor properly dismissed the plaintiff's complaint for want of equity because there existed an adequate remedy at law by which the plaintiff could question the validity of the assessment as to the benefits derived by its land. Since there is no showing of any matter which would give the court general equity jurisdiction, the proper forum for the plaintiff to raise its question of benefits is upon the collector's application for judgment and order for sale in the county court of Lee County.

The decree of the circuit court of Lee County is, therefore, affirmed.

*Decree affirmed.*